Our second case this morning is Bolton v. Inland Fresh Seafood Corporation of America. Mr. Sawyers. Can you support Sean Sawyers on behalf of the plaintiffs? If you could, pull that mic up a little bit, I think it might help. Thank you. In 1985, the 11th Circuit created an administrative exhaustion requirement for employee retirement from Security Act claims and impose that requirement not only on plan-based denial of benefits, but also on statute-based claims for breach of fiduciary duty. The court should now overrule the exhaustion requirement as applied to statutory claims. Well, let's say this. Right. Might it be that the exhaustion requirement that we imposed, we had no business imposing, but if there is any exhaustion requirement, the exhaustion requirement should arise from the contract? What about that? Well, if there was a, the parties, I think, would be free to agree to that. I don't think it's the case that it's established here, and that wasn't the... That's a different question. So if we overrule our case law, as you advocated, then I think one of the things we have to figure out is, to the extent that there is an exhaustion requirement, the exhaustion requirement is a matter of contract, right? I mean, if the plan doesn't require a claimant for benefits to go through an administrative process, then this would be kind of a moot point, right? Well, it would be... If you see it. If we overruled our precedent. If there were no judicial exhaustion requirement, and no, nothing in the plan document, the contract that could be read to require exhaustion, certainly there would be no basis for requiring it. Yeah. And it might be, too, that the plan imposes an exhaustion requirement that's very plan specific for the claimant, as to why they think they're entitled to benefits. But who knows? There might be some plans, this is a case for another day, and certainly not for the en banc court today, where a claim of breach of fiduciary duty, what we think of as a statutory claim, where the benefit plan itself might purport to create an exhaustion requirement for that. But that's really beyond the scope of it today. It seems to me that the exhaustion requirements can exist here, but they arise, your argument has to be that they have to arise from the contract itself. Agreed, your honor. And that's not really the issue that was presented in the en banc briefing notice. So whether there may be another part of ERISA that would prevent enforcement of that hasn't been fully briefed and presented. And here . . . Well, and it may be that when you look at whatever provision of the contract that the plan administrator would point to as imposing an exhaustion requirement, it might be clear as day that it doesn't have anything that we would call a statutory claim there. But those are questions that would be left on a case-by-case basis for other days, right? I agree with that, and the plan here, the language does not apply to the fiduciary breach claims, so it wouldn't apply in this case. Is there anything in ERISA that would prohibit a plan from having an exhaustion requirement for statutory claims? You mentioned that there might be, and we haven't briefed it. Do you believe that there is something in ERISA? I thought the operating assumption had been simply it speaks to one category, but it's silent as to the other. And because it's silent as to the other, we should not judicially impose that. I think I agree with that. That seems to be the premise of the Chief's questions, but you've just suggested that there may be other provisions of ERISA that would prohibit exhaustion for statutory claims. Do you believe that to be so, and what provisions are those? Like I said, it hasn't been briefed, but an example is in the Shapiro case, the arbitration provision was held unenforceable because it conflicted with ERISA's authorization to pursue plan-wide relief. So the arbitration provision was held not to be enforced, even though it was a term of the plan.  But there may be provisions of a plan for which it could run afoul, but that's not the question I asked. Is there something prohibited, just a straight, you must exhaust all claims, including statutory claims, period. Is there anything prohibiting that in ERISA? Well, I mean, I think my answer was that the analogous example of an arbitration provision, there is something in ERISA that would prohibit that from being enforced, and this hasn't been briefed here, so I can't say definitively is there anything in ERISA that might prohibit it. There — Sorry. No, no, go ahead. My only concern is we — so if we just take an action which simply overrules Mason, with the understanding that a party can contract around this, but the underlying premise is that a party actually can't contract to exhaust because of something else out there, I think I'd like to know that, and I suspect others here might like to know that, too, in deciding what the appropriate thing to do here is. Understood. Well, there are — courts have enforced different types of provisions, the cases that the defendants cite, things like venue and choice of law, so there's nothing that I'm aware of right now that would say an exhaustion mandate contractually agreed to would be unenforceable based on ERISA. Can I follow up on that now? There are a number of circuits which have held, contrary to our decision in Mason, that ERISA does not require, in and of itself, does not require an exhaustion requirement for breach of fiduciary duty and other statutory claims, right? Right. Okay. Do you know whether in those circuits employers, after those decisions have come out, have tried to contract around those rulings so that what you couldn't get through ERISA as a matter of statutory interpretation or implication, you are now getting by way of contract? I'm aware of a few isolated instances where it's happened. My firm has handled probably 40 or 50 of these similar cases in courts across the country, and it's never come up that a case was dismissed based on a provision in the plan requiring exhaustion that wasn't followed. Okay. So the upshot of your answers to Judges Luck and Jordan, that absent something like Mason, yes, employers can contract around this. You may run into kind of islands of problems that result not so much from ERISA but from others or might result to like pockets, like sort of the arbitration scenario. Maybe that does arise from ERISA. But there's no sort of like sweeping bar. By and large, you can contract around it. You may run into some bumps in the road. I think that's a fair assessment. And so the bottom line is any exhaustion requirement arises from contract. That's got to be your position, right? It's certainly not in the statute, so if it comes from anywhere, it could come from a contract. Well, the statute contemplates that we would enforce that, right? That we would enforce a plan that has exhaustion requirements in it because that's part of the contract. Well, certainly the plan document is understood to be an enforceable contract with the other caveats I mentioned, just that there could be some reason why it's unenforceable under ERISA. I mean, there's a reason why there might be problems with allowing, and again, it may not be present at the en banc stage, but everyone seems to have asked about it, so I'll continue on the same train of thought. In a benefit scenario, you require exhaustion because you give the plan administrator the opportunity to create a record and explain why it has granted or denied a benefits claim pursuant to terms of the agreement, the planned contract. But in a breach of fiduciary or other statutory scenario, the plan is not the basis of the  The basis of the claim is that the administrators have violated federal law, ERISA, by doing certain things that they shouldn't have done. And so if you allow parties to contract around a non-exhaustion doctrine, you're basically requiring exhaustion before the fox was let into the chicken house. It's like, oh, listen, you violated your fiduciary duties. You did this. You did this. You mismanaged. You had a conflict of interest. We'd like you to tell us that you did that and then provide us with relief. My suggestion is that that's at least a very different scenario for exhaustion purposes going forward. I agree. I think it's completely different than the plan-based denial of benefits, and it just doesn't make a whole lot of sense in the fiduciary breach context to ask the plan administrator to interpret the statute and to determine if its own conduct or that of a co-fiduciary was prudent and comply with the law. So it's not something that we've seen other plans include very often as a contract term. But, I mean, we require that, and so does Congress, with all sorts of exhaustion requirements. We require the person who has supposedly acted illegally to evaluate whether they acted illegally to give a remedy for that illegal action. Exactly. I mean, that is not unheard of, and it would seem to me that if such a provision was out there, it wouldn't be wrong to say, hey, fiduciary, we think you did this wrong. Please correct that action. They can look and correct it or at least create a record of this to be able to then tee it up for litigation if they ultimately say no. That's not an unheard of situation, is it? I don't know that it's unheard of, but it's rare, and I think companies haven't seen an incentive to do that because it just hasn't been done, and there's no remedy that can really be provided through the process when the plaintiffs are seeking monetary damages or some sort of equitable relief that the plaintiff administrator has no authority to  Okay. Mr. Sawyers, you've saved some time for rebuttal. Let's hear from the Department. Good morning, and may it please the Court. My name is Edward Wanger, and I'm here on behalf of the acting United States Secretary of Labor. As ERISA's steward, the Department is committed to safeguarding ERISA's twin goals. The first is making sure that there's fair and prompt enforcement of rights, and the second, ensuring that there are uniform standards across the United States. Counsel, can you weigh in on the conversation we seem to have been focusing on, and that is I understand the government's position with regard to whether we should overrule our precedent on this or not, and let's assume I agree with you. The next order question that we've been talking about is, and I guess my question is, is it the Department's position that an employer and a private entity or a beneficiary and a private entity cannot agree, as part of the plan, to exhaust all claims, including statutory claims? Judge Luck, we would argue that as a matter of contract law, the Department would take the position that the parties themselves, especially given the disparity in bargaining, should not be permitted to actually contract away rights that are promised in the ERISA statute itself. ERISA is— So you think—I just want to be clear. So you're reading as ERISA—you're reading in ERISA is that that is an exclusive—to the exclusion of any exhaustion requirement under—for the statutory violations and claims? That is the position of the Department. We obviously have actually gone through the briefing process of this, but we do have concerns. With issues like the arbitration example that's come up, there is a Federal Arbitration Act that speaks to that, so you actually have a Federal law that actually goes to that purpose. The concern with actually allowing parties to contract around these statutory claims is that, in a lot of cases, and I think that this one is a very good example, justice delay can actually be justice denied. From what I understand, there is an underlying statute of repose issue, and— Well, can you just clarify for me, then, what would they be exhausting? I mean, if it's a statutory claim, it sounds like it's a matter—it's an interpretation of the law, and the uniformity of making sure the law is interpreted correctly is not something that should be done on a case-by-case basis, as opposed to the parties understanding what the law is, and then the exhaustion is whether or not the facts of your particular case equal a violation. Am I incorrect in that? No, you're precisely correct, Judge Abudu, and the reason why is that, whenever you're discussing what the actual legal context is for fiduciary duties, that is the role of the courts to handle that. That's not the role of the plan administrator. So, but you do agree there can be exhaustion requirements. Let's say we overrule Mason. That doesn't mean exhaustion as a requirement goes away, right? Any exhaustion requirement arises, does it not, as a matter of contract? We would argue that, as a matter of ERISA law, certainly for the benefits claims, those. If the question is just what is due under the documents themselves, certainly that's been the rule since ERISA was passed. It's implicit in the statute of ERISA itself. But, I mean, the plan could say that you have the opportunity for fair review. You can take advantage of that kind of process, administrative process, but you're not required to. As a matter of contract, you could do that, right? If I understand your question, Judge Breyer, are you asking if the contract itself could impose an exhaustion requirement for the statutory claims? I'm not asking about statutory claims. Just talking about benefit claims. They could have an administrative process, make that available, which is implicit in the statute itself, that they have to do that, right? But not require you to exhaust it. Oh, certainly, Your Honor. And then, if you came into court and there was a non-exhaustion defense raised, the court looks at it and says, well, in fact, the plan doesn't require exhaustion, right? Certainly, Your Honor. And all of that, though, would be a matter of contract, right? That is correct, yes. To be very clear, the ERISA statute . . .  Oh, sorry. I don't want you to withdraw your answer to the Chief, but I thought you had answered that question differently when Judge Luck had asked you about it. I thought your first answer was . . . I'm not pushing you one way or the other. I just want to know what the department's position is. I thought your position was that parties should not be able to contract for an exhaustion requirement for breach of fiduciary and other statutory claims under ERISA. If I understood Judge Pryor's question correctly, he was specifically asking about benefits claims. He started that way, but he didn't finish that way. My question was only about that. So, to be very clear, and I know that I'm very quickly running out of time, but with permission, I'd like to just explain the position. ERISA does mandate that plans include in their documents a way in which benefits claims can be resolved outside. Nothing in ERISA says that that is a legally required step in the process to actually go forward and bring your claim to court. So to Judge Pryor's points, if that's in the plan documents but it's not required as a matter of the plan documents, there's not . . . The administrator, the plan administrator has to give that opportunity to a claimant, right? Absolutely, yes. By statute, right? That is . . . But it doesn't . . . the administrator doesn't have to require them to go through it, right? That's what my question was about. But all of that is something that when we get to a failure to exhaust defense, we have to just go to the plan. We have to go to the contract to figure out what is actually required, right? For the benefits claims, correct, Your Honor. And so any exhaustion requirement comes about as a result of contract. You agree with that, even though I understand your position that plans can't require exhaustion of statutory claims, right? I understand that. I'm not sure that can be . . . I don't think that can be decided today by the en banc court or probably even by this case. I just want to make sure we understand that where exhaustion requirements come from. They come from, you agree with me, right, contract? That is correct, Mr. Pryor. They come from that. But to be very clear, the position today, and to clear it up for Judge Jordan and also for Judge Luck, the Department is taking a position that there is no, and there should be no, certainly no judge-made requirements for statutory claims. In a future case, if it came up, we would take the position that contract-related, contract-created requirements for statutory claims would be subject to an awful lot of judicial scrutiny. We don't believe that contract, by virtue of contract, plaintiffs or employers should be able to contract away or force their employees to contract away their rights under ERISA. Okay. I don't hear any more questions. Thank you very much, Mr. Wenger. Let's hear from Mr. Becker. Thank you. May it please the Court, Theodore Becker, for all defendants this morning. Is that better? Much. Okay. Thank you. And with me at counsel table is Sarah Hogarth and Richard Pearl. The Court should reaffirm Mason based on the uncontroversial proposition that ERISA plan terms are enforceable contractual provisions. And we believe that's what the Court should rule on. But doesn't Mason go beyond that point? In other words, doesn't Mason say, and haven't the later cases interpreted Mason as saying, regardless of what the contract language provides for, ERISA, as a statutory matter, requires exhaustion of these claims? You don't think Mason is read that way? Judge Jordan, I think that Mason has been read that way, but also the progeny of Mason have increasingly looked at the plan and the contract. So did Mason, but Mason focused on statutory requirements. Of course, there is no statutory requirement in ERISA that prohibits exhaustion. Nothing in ERISA prohibits exhaustion. Even the circuits. So is Mason, is Mason wrong to the extent that it said ERISA itself requires exhaustion of these claims regardless of what the plan documents say? I'm not sure Mason says that exactly. I think what Mason says. But to the extent that it says that, do you disavow it? No, what I would say is Mason was correctly decided. There's nothing in ERISA that prohibits a court from making a rule requiring exhaustion, whether it's of benefits claims or a briefs of fiduciary duty and statutory claims. However, I think that increasingly the courts that have followed Mason in this Eleventh Circuit have looked to the contract and the plan. So that I think that really where we are in the state of the law reading all of the Eleventh Circuit cases together is the law says, look to the plan. If the plan is a matter of contract, has an exhaustion requirement, it's enforceable because there's nothing in ERISA that prohibits that. Whether it's- Here the case wasn't litigated that way. If my memory serves, you understandably asserted Mason and said you have to dismiss because ERISA requires exhaustion. They admit they haven't exhausted out of here. They defended that assertion on the ground that the plan documents excuse them from exhaustion. So it was sort of a flip about that. You did not begin, understandably, because you had Mason on your side, but you didn't begin with, oh, the plan documents require exhaustion. They haven't exhausted. Your argument was Mason requires exhaustion. They haven't exhausted. They're out of court. Yes. So it's a little odd to be taking the different position now. Well, no. And, Your Honor, it's odd only because of the way the case evolved. And that's what evolved. And that's why we're here today. Of course, Mason was the law of the 11th Circuit. Plaintiffs didn't follow it. So yes, we moved to dismiss on that basis. And the district court agreed. And the panel agreed, actually, subject to your concurring opinion and that of Judge Pryor's. However, we are, in this case, defending Mason on a different ground, which is the first time that's ever came up was when the petition for rehearing on Bonk was filed. Because before that time, there actually was not a challenge to exhaustion being the law of the 11th Circuit. So there's several cases we cite in our brief. Some of the judges who are active and are here today agree that we're entitled to bring an alternative ground to affirm Mason when the first time that anything ever arose was in the context.  Let's cut through it. So is it your position that we should say that insofar as anyone has interpreted Mason to impose an exhaustion requirement that does not appear in the plan itself, that is not part of the contract, we disavow that? Yes. That would be an incorrect understanding of Mason. And your position then, as I understand it, is that any exhaustion requirement has to arise from the contract itself? Yes, Chief Judge, that is our position. It sounds to me then like we have, oddly, raging agreement between you and Mr. Sawyers with the DOJ, the odd man out. You and Mr. Sawyers agree what the law is. Forget that there was anything that was ever called Mason. As to the law, I think you and Mr. Sawyers agree the DOJ may have a different view. Is that right? That's what it sounds like to me, Your Honor. And also we have to keep in mind, and I know you all have this in mind, that this is just an exhaustion requirement. This is not a prohibition against free access to the courts. After 90 or 120 days of going through the administrative process, any participant still can go to court and raise any claim that they've raised below. So all we're asking here— Well, I mean, technically that's not right. It may not be determinative, but technically that's not right here because the exhaustion requirement for fiduciary breach claims is tied to an arbitration provision, which requires exhaustion of that sort of claim. So when you're saying you can go to court after 120 days, that's not quite right. Well, no one's invoked arbitration here. We haven't requested it. I understand that, but you have written before the panel, when the plaintiff said, the plan language is ambiguous because it says you may exhaust, you may go to the administrator or you may go to court, and they said that's ambiguous, we're not required to exhaust. Your response was, oh, but look at the arbitration provision because the arbitration provision expressly covers fiduciary breach claims and it says for all covered claims, you must exhaust. That was part of our argument, Judge Jordan, but actually our primary argument was to look at the plan that was originally written before the arbitration provision was added to it by amendment, and I believe the panel agreed with us in its opinion. The panel basically analyzed the plan and said the original plan requires exhaustion in all cases, regardless of the claim, and in addition to that, look at the arbitration provision where the preface makes that even more clear, but I think that either way, with or without the arbitration provision, the plan is clear that it requires exhaustion of all claims. You made the reference to the word, the permissive word may? The permissive word may in the plan, and I think this was also addressed by the district court and the panel opinion, refers to 5020A1 claims, which are commonly known as benefits claims, but actually all claims are benefits claims, as the Chief Judge pointed out in the land fair case. Well, but the plan doesn't otherwise have any other exhaustion requirement. Oh, Your Honor, it does. What provision of the plan, not the arbitration provision, what provision of the plan do you believe requires exhaustion of fiduciary breach and other statutory claims? Certainly, Judge Jordan. The plan's claims and review procedures direct participants to submit a written claim to the committee or seek a review of the committee's benefit determination. Yeah, but counsel, that says, let me read it, you've just summarized it, let me actually read it. While a participant or beneficiary need not file a claim to receive a benefit under this provision, in other words, they don't have to, such a person may submit a written complaint to the committee or seek review of the committee's benefit determination. The committee will afford the participant or beneficiary a full and fair review of such requests as provided in Supplement A, which is arbitration, right? Yes, Your Honor, that's right. That's what it says. Hey, that's not a shall. But that refers to automatic benefits. In other words, participants are told that they don't have to file a claim to get the benefits they're entitled to, that's otherwise everybody would be filing a claim or think they are filing a claim, and that's very standard language in a plan. So after you eliminate all of the automatic benefits that come to people, and if they're right, they just accept them, you have that small subset of claims where the participants believe they haven't gotten a proper benefit. It still says may as to those small subset that you're talking about. It says such a person may, and then there's two clauses. One is submit a written claim to the committee. That's the first group to pay me what I'm due, and that triggers automatically, or seek review of the committee's benefit determination. That still says may as a modifier. I think it still refers to the claims that are automatic. But here there's more. The plan addresses the disputed issue, this very dispute, valuation, providing that all purchases of company stock by the trust will be made at a price that does not exceed fair market value. But that's a merits point, not an exhaustion point. But you may be right that based on the plan language, their fiduciary breach claim has problems, but it's not an exhaustion issue. Well, it's also a breach of contract if it's in the plan and they didn't follow it. This is extra contractual. A breach of fiduciary duty claim and a statutory claim under ERISA, as I understand those claims, are not plan-based. They're that you have not complied with the requirements of the statute. Your Honor, I beg to differ. I think that every benefits claim also has that component. If people didn't get their benefits, it very well could be because there was a breach of fiduciary duty. It very well could be that because the valuation was wrong. So I know that's something that the ERISA community sometimes talks about. One thing is a benefits claim and the other thing is a breach of fiduciary duty. But they're all breach of fiduciary duty claims. So you're saying they're so co-mingled that we can't separate them out? It's all or nothing? I think you can't. You can see what is a 502A1 claim versus a 502A2 claim. But I think if we're talking about benefits claims, as the plan refers to, all claims are benefits claims because they... This is the right phrase, bootstrapping them. You start with benefits, but then you bleed into the legal interpretation of the statute. And that, to me, still seems different. Well, then in AESOP, for example, Your Honor, a complaint could be made by a participant that he or she doesn't think that they have the right number of shares in their account. That can be a benefits claim that's very simple because somebody just didn't count right. Or it can be an allocation claim, or it can be a valuation claim, which is a breach of fiduciary duty. The plan administrator, clearly, and all the circuits agree with this, can determine those claims and they have to exhaust in all the circuits that require exhaustion of those claims. Counsel, the benefit claim is defined here, and it's defined in the Supplement A, the arbitration section. And what it says is the term, quote, benefit claim, end quote, means a request for a plan benefit or benefits made by the claimant or by an authorized representative of the claimant that complies with the plan's procedures for making benefit claims. It's a request for a plan benefit or benefits. It's saying I'm entitled to or you did not pay me enough. That doesn't seem like the claim that we have here. What we have here is you misvalued this thing, and because you misvalued it, you had a conflict of interest to try to inflate valuation to get yourselves more money. That's not a request for plan benefit or benefits, is it? Your Honor, it is. As Chief Judge said in Lanphier, benefits claims, breach of fiduciary claims. I'm asking you, based on the definition in this particular case, is the claim that they are making here, that is that the fiduciaries misvalued this to give themselves more money, a request for a plan benefit or benefits? Yes, because all the plan participants are seeking more money in their accounts because they don't think they have enough money because of the valuation allegedly being wrong. That's the remedy they are seeking. But is this a request? Are they making a request or did they make a request that I be paid benefits or benefits? They say, I'm entitled to benefits right now and you haven't given me or you've shortchanged me and I'm entitled to more. Have they said either of those things? Well, these plaintiffs didn't make the request because they failed to exhaust and thumbed their nose at the court. I'm talking about at their complaint. At their complaint? Yeah. Their complaint alleges that they, their amended complaint, alleges that they did not exhaust. That's the fatal. Counsel, I know what you want to say. I'm asking you to answer my question. The complaint that they have made, are they saying that I was entitled to benefits and didn't receive it or you gave me less benefits that I was entitled to? In other words, a request for a plan benefit or benefits, which under the contract is a benefit claim, or are they saying something else? Judge Luck, I think it's the same thing with all due respect. How? It's the same thing because if they didn't get enough in their account because the evaluation was wrong, they didn't get a benefit they were entitled to. I just, I think the difficulty is that it is hard for some of us to think that every breach of fiduciary claim can be recharacterized as a benefits claim. Now, you may be right that there's a subset of those claims which overlap, right, with the plan diagrams, but it's hard to imagine that every breach of fiduciary claim is necessarily a benefits claim. Sometimes we don't know when it's first made. So for example— But here you have it made. It has been— No, I'm not talking about the complaint, Your Honor. I'm talking about when somebody walks into the human resources office, for example, and says, I don't think I have enough stock in my account. We don't know what that is. So what we'd like to do is have mandatory exhaustion, just go to the plan administrator, say the same thing. Let's not even call it a claim. Let's call it a complaint. I don't think I have enough in my account, enough stock. The plan administrator then goes, looks at it, makes a determination, creates a record, and documents then go into that record. There's a reasoned decision. The participants have a right to appeal. And all this takes place in, at most, 120, 180 days, sometimes much sooner. And then they can still go to court if they disagree. What if it's a pure — what if it's a pure conflict-of-interest claim? In other words, what if it's a pure conflict-of-interest claim? In other words, no effect on the downstream, nothing happened that changed the amount that was in the account? It's just you had a person making a decision based on a clear conflict of interest. I think there's lots of cases, Your Honor, and lots of statutory schemes where people who have an alleged conflict of interest or a potential conflict of interest are also asked to make a determination when a participant makes a complaint or a claim. Oh, I know it can do that. My point is simply, how is that a benefit claim under Supplement A of the plan here? I don't think it's a claim at all to come in and say somebody has a conflict of interest. They have to have — It would not — it would be a breach of fiduciary duty. It would be a statutory violation, but it wouldn't be a benefit claim, right? Your Honor, I'm sorry. I beg to differ. Tell me. Beg me. Tell me how — It's a benefits claim because the allegation — and it's the allegation in this complaint here as well — is that the participants didn't get enough in their account of — Right, but that's not the hypothetical I asked. The hypothetical I asked is a pure conflict of interest. So-and-so owned the stock and owned an interest in the thing which they invested. It ended up being a great investment. No one lost any money as a result. No one's pointed to anything else they should have invested in, but a pure conflict of interest. So what's the harm in having them go for, at maximum, 180 days to that same plan? I understand what — there may not be no harm at all, but that's not the question we're asking. The question we're asking is how is that, under Supplement A, a benefit claim? I believe there — I'm sorry, I don't want to — you know, I believe they're all benefits claims. I think Landfair lays that out very clearly. And you go, and you know what, what if the plan administrator says, you know, for example, in this case, a $90 million note, you know, $55 million of it has not even yet been paid. So the plan administrator says, you know what, even though I was one of the sellers of the stock, I'm persuaded. I've taken another look at the valuation. I think that there should be money reduced from the note, and we'll accept less. And we never have that opportunity to settle a case, to take a second look at a case where there's no exhaustion of remedies. And if the plan administrator acts in bad faith, wearing the hat of a plan administrator that's distinguished from a seller, which ERISA permits, then the court can take care of that. There is no deprivation. So your position essentially is not only was Mason — the outcome of Mason is correct in terms of the exhaustion requirement. Mason was incorrect in distinguishing between a fiduciary claim and a benefits claim, because your position is that they're all benefits claims. And I think Mason said we're going to have exhaustion for all of them, whatever we call it, and I think that's right. Are there any other questions? Unless, of course, the contract doesn't require it. That's been your position, I thought, at the beginning. Unless the contract doesn't require it. But in this case, we do believe the contract does. And by the way, the arbitration clause has never been ruled to be invalid here. But it goes back to what we should look to to determine any exhaustion requirement is the plan. Always look to the contract. First. That's it. That's exactly right. The exhaustion requirement doesn't arise from the statute. It has to arise from the contract. Yes. The statute doesn't say anything about exhaustion for any type of claim. Okay. Mr. Sawyers. And just to clarify our position, we don't necessarily disagree with the Department of Labor or agree with the defendants about whether a plan can impose this. It's just something that hasn't been briefed on the enforceability under ERISA. Can you give me an example of a statutory claim that would not, clearly not fall within the definition in Supplement A of a benefit claim? I think any kind of breach of fiduciary duty would not fall under the benefits. Well, do me a favor. Give me one that you think clearly wouldn't. Well, this here, that there was self-dealing involved and imprudence in valuing the company's stock. At the end of the day, you're asking for a difference between what could have been and what should have been, and that ultimately affects the bottom line of your clients. So how is that not, how is he not right, or now is that the case that your opposing counsel keeps relying on, not at the end of the day when you look down the rabbit hole, still a benefit claim? Well, it's not a benefits claim because the Department of Labor's regulation was promulgated in accordance with 1133, which Mason even recognizes is limited to claims for benefits that have been denied as distinguished from a breach of fiduciary duty. Yeah, but that's not what Supplement A says. Supplement A is a bit broader than that. Well, I disagree, Your Honor. Supplement A... Well, I read it to you. It doesn't say what you just said. It tracks the regulation almost verbatim. If you look at Section A-1, it defines the term benefit claim verbatim from subsection E of the DOL regulation. Right. And it just says a request for a planned benefit or benefits. And if a request for planned benefits says you paid me less because of this conflict of interest you had, that seems to be, at the end of the day, a benefit claim, is it not? That's at least the argument your opposing counsel has made. I don't think it is, unless you would just completely obliterate the distinction between benefits claims and statutory violations. And this is just, you know, Supplement A is just tracking the regulation throughout. A-1 through A-7 just track subsections E through J of the regulation. So that can't be read as a contractual agreement to mandatory exhaustion of all statutory claims, or else the same rationale would apply in every case, because this is just a minimum regulatory requirement that every plan in the United States has to include. I would add on the arbitration provision, the First Amendment, it hasn't been invalidated under Shapiro, because Shapiro hadn't been decided yet. And it also, the language, Judge Jordan, respectfully, it does not say that fiduciary breach claims are subject to exhaustion. It says all covered claims are subject to arbitration, but as to exhaustion, it says it's required to the extent applicable, to the extent Supplement A applies to it. That language, to the extent applicable, would be completely superfluous if it applied to every type of ERISA claim. That's an indication that it excludes statutory claims. Okay. Do you think that our en banc opinion needs to do anything besides get rid of whatever extra textual exhaustion requirement may have been established? I don't think so, Your Honor. Thank you. Thank you, Mr. Sawyers. We're adjourned for the day.